2024 IL App (1st) 232148-U

No. 1-23-2148B

Order filed February 8, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 0095501 |
| | ) | |
| FAHEEM NORWOOD, | ) | Honorable |
| | ) | Michele Pitman, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Justices Mikva and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 2    Defendant Faheem Norwood appeals from an order of the circuit court denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022) (Code)), as amended by Public Act 101-652 § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today Act (Act). Mr. Norwood contends that the trial court erred in granting the State's petition because the State failed to meet its burden

of proving by clear and convincing evidence that no condition or combination of conditions of pretrial release could mitigate the real and present threat he posed to the safety of any person or persons or the community. In particular, Mr. Norwood asserts that the State failed to meet its burden to show that the threat posed could not be adequately mitigated if he were released and placed on electronic monitoring. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      In December 2021, Mr. Norwood was arrested in connection with the shooting death of Isiah Davis. Mr. Norwood was denied bond following a hearing on January 1, 2022. While he was in custody, a grand jury indicted Mr. Norwood on charges of first degree murder, dismembering a human body, armed habitual criminal, unlawful use of a weapon by a felon, concealment of a homicidal death, involuntary manslaughter, abuse of a corpse, and obstruction of justice. On September 18, 2023, while Mr. Norwood was in pretrial detention, the Act went into effect. *Rowe v. Raoul*, 2023 IL 129248, ¶ 52.

¶ 5      On September 27, 2023, Mr. Norwood filed a petition to remove a financial condition of pretrial release. In the petition, Mr. Norwood sought a hearing under section 110-5(e) of the Code (725 ILCS 5/110-5(e) (West 2022)) where the State would be required to show by clear and convincing evidence that he was not entitled to pretrial release.

¶ 6      On October 27, 2023, the State filed a petition for a pretrial detention hearing. The State contended that Mr. Norwood was detainable under the Act because he committed the offenses of first degree murder, dismembering a human body, armed habitual criminal, unlawful use of a weapon by a felon, and involuntary manslaughter. The State further alleged that Mr. Norwood

posed a threat to any person or persons or the community and that no condition or combination of conditions of pretrial release could mitigate that threat.

¶ 7     At the hearing, the State proffered that on the date of the incident, Mr. Norwood was with Mr. Davis at the home of Steve Oliver (Steve) and DeAngalo Oliver Holiday (DeAngalo). Mr. Norwood, Mr. Davis, and DeAngalo were in the basement smoking marijuana when Mr. Norwood took a revolver out of his pocket. Mr. Norwood emptied the bullets from the gun into his hand, and then spun the cylinder. Mr. Norwood pointed the gun at Mr. Davis and asked him if he "would take one for your boy." Mr. Norwood pulled the trigger, but no bullet was fired from the gun. Mr. Norwood next pointed the revolver at DeAngalo, and asked him if he "would take one for your boy." Mr. Norwood pulled the trigger, but no bullet was fired. Mr. Norwood again pointed the gun at Mr. Davis and asked him if he was "sure he would take one for his [*sic*] boy." Mr. Norwood again pulled the trigger and shot Mr. Davis in the head.

¶ 8     After the gunshot, Steve ran downstairs and Mr. Norwood yelled that it was "an accident." Mr. Norwood placed the gun into Mr. Davis' hand and fired the gun once toward the basement wall. Mr. Norwood explained that Mr. Davis needed gunshot residue on his hand to make the shooting look accidental. Mr. Norwood rented a U-Haul truck and the three men placed Mr. Davis' body inside the truck. They also cut the bloody carpet out of the basement and placed it into the truck with the body.

¶ 9     Mr. Norwood and DeAngalo drove the truck to a location in Riverdale, Illinois. They placed Mr. Davis' body in an abandoned second floor apartment. Mr. Norwood drove DeAngelo back to his house. Mr. Norwood left his phone and the U-Haul truck at the house and then left the house on foot. Mr. Norwood later bought new flooring for Steve and DeAngalo's basement and

told them to install it. Mr. Norwood told them to tell Mr. Davis' family that Mr. Davis had left Steve and DeAngalo's house and that a gray Dodge Charger had been following him.

¶ 10    Later that evening, officers responded to a call of a burning body in an alley in Riverdale. The officers found Mr. Davis' body unresponsive and severely burned. Police recovered one bullet from the rear of Mr. Davis' head. Detectives connected Mr. Norwood to Mr. Davis through surveillance video that showed the brown van that Mr. Norwood was driving when he picked up Mr. Davis to take him to Steve and DeAngalo's house. Video captured by a Ring doorbell camera connected the brown van to the U-Haul truck.

¶ 11    The next day, the Riverdale Fire Department responded to fire at the abandoned apartment building where Mr. Norwood and DeAngalo had placed Mr. Davis' body.  The fire department determined that the fire was intentional. Officers executed search warrants at the abandoned apartment and at Steve and DeAngelo's residence and found items containing a DNA profile that matched Mr. Davis. Mr. Norwood was arrested in connection with these events on December 30, 2021. Mr. Norwood was on parole at the time of the shooting.

¶ 12    With regard to Mr. Norwood's criminal background, the State proffered that Mr. Norwood had a 2020 conviction for unlawful use of a weapon by a felon, a 2010 conviction for vehicular hijacking, a 2005 conviction for aggravated vehicular hijacking, a 2005 conviction for aggravated battery, and a 2003 juvenile finding for arson.

¶ 13    The State asked that Mr. Norwood be detained based on the fact that he was charged with forcible felonies. The State argued that based on the facts of the case, Mr. Norwood posed a real and present threat to the safety of any person or persons or the community. The State asserted that Mr. Norwood's criminal background was "serious," and the charges in this case were supported

not only by witness testimony, but also cell phone video, video surveillance, and U-Haul business records.

¶ 14    In mitigation, defense counsel stated that Mr. Norwood was 36 years old and prior to his arrest was working as a truck driver. He related that Mr. Norwood had a 4-year-old daughter and was her "caretaker." Defense counsel also noted that two people attended the hearing via Zoom, including Catherine Ball. Ms. Ball was currently supervising Mr. Norwood's daughter. Defense counsel maintained that if released, Mr. Norwood could be placed on electronic monitoring at Ms. Ball's residence, where he could help her with daily tasks, transport her to doctors' appointments, find employment, and care for his daughter.

¶ 15    Defense counsel also argued that the State had failed to satisfy its burden because the proffer indicated there was only "one testifying witness who was present at the time of the shooting with my client." Defense counsel asserted that there was "no corroboration" because the proffered evidence only showed Mr. Norwood's vehicle, but there was no corroboration "about the nature of the shooting itself, who pulled the trigger, what happened in that basement. It's simply a very biased witness." Counsel contended that DeAngalo had motivation to lie to police when the search warrant was executed at his house to shift the blame to Mr. Norwood. Defense counsel asked the court to place Mr. Norwood on electronic monitoring.

¶ 16    In response, the State contended that it presented evidence that Mr. Norwood was on parole at the time of the offense. The State argued that if being on parole was not sufficient to prevent him from committing the offenses alleged in this case, then "certainly [electronic monitoring] cannot protect the community from Mr. Norwood."

¶ 17    Defense counsel responded that it was "disingenuous" to suggest that parole was a more serious supervision than electronic monitoring. Defense counsel noted that under electronic monitoring, Mr. Norwood would be required to stay at one location.

¶ 18    In ruling on the petitions, the court found that the State had shown by clear and convincing evidence that the proof was evident and the presumption great that Mr. Norwood committed a detainable offense. The court found that Mr. Norwood posed a real and present threat to the safety of any person or persons or the community based on the facts of the case. The court noted that Mr. Norwood was alleged to have shot Mr. Davis in the head and then "tried to basically cover up the shooting." The court found that based on these facts, combined with Mr. Norwood's criminal history, no condition or combination of conditions could mitigate the real and present threat that Mr. Norwood presented to the safety of any person or persons or the community. The court therefore ordered Mr. Norwood to remain in pretrial detention.

¶ 19    In its written order following the hearing, the court summarized its finding that no condition or combination of conditions could mitigate the real and present threat that Mr. Norwood posed, noting that he had a violent criminal history, including possessing firearms and two vehicular hijackings.

¶ 20    Mr. Norwood filed a timely notice of appeal from the circuit court's order. We find that we have jurisdiction to consider the merits of this appeal. See 725 ILCS 5/110-6.1(j) (West 2022); Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023).

¶ 21                                II. ANALYSIS

¶ 22    On appeal, Mr. Norwood contends that the circuit court erred in finding that the State satisfied its burden of proving by clear and convincing evidence that there were no conditions or combination of conditions of pretrial release that could mitigate the threat Mr. Norwood posed to

the safety of any person or persons or the community. He maintains that the evidence presented at the hearing showed that he had a place to stay on electronic monitoring and that electronic monitoring is "more invasive form" of monitoring than being on parole. He asserts that the circuit court solely relied on his criminal history in determining that he could not be released, which was an insufficient basis upon which to make that determination. He argues that electronic monitoring is an "untested" condition of release in his case.

¶ 23 Under the Act, we presume that all defendants are entitled to pretrial release. 725 ILCS 5/110-2(a), 6.1(e) (West 2022). The State has the burden of proving at a hearing that a defendant should be denied pretrial release. *Id.* To meet its burden, the State must prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022).

¶ 24 In reviewing the trial court's order granting, denying, or setting conditions on pretrial release, we afford great deference to the trial court's factual determinations and will reverse them only if they are against the manifest weight of the evidence. *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8. The trial court's ultimate decision to detain or not detain, however, is reviewed for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9); *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18. An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable,

or when no reasonable person would agree with the position adopted by the trial court. *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 25    Mr. Norwood does not challenge the circuit court's ruling on the State's first two burdens under section 110-6.1(e), but solely contends that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions of pretrial release could mitigate the real and present threat that he posed to the safety of any person or persons or the community. In response, the State asserts that the proffer and Mr. Norwood's criminal background demonstrate that he is "an incorrigible possessor and user of illegal firearms." The State maintains that placing Mr. Norwood on electronic monitoring would not be sufficient to prevent him from obtaining and using illegal firearms.

¶ 26    Here, the circuit court found that the State had met its burden on the third component of section 110-6.1(e) because of the facts presented in the State's proffer about the details of the charged offenses and Mr. Norwood's violent criminal background. Section 110-5 of the Code outlines factors for the circuit court to consider in determining the conditions of release. These factors include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the defendant's criminal  history, and whether the defendant was on parole at the time of the offense. 725 ILCS 5/110-5(a)(1)-(3) (West 2022). In this case, the court commented on Mr. Norwood's violent criminal history, which included illegally possessing firearms and committing vehicular hijackings. The State's proffer, which identified two eyewitnesses, set forth allegations for serious criminal charges, including first degree murder. The State also proffered that Mr. Norwood was on parole at the time of the alleged offenses, which, in addition to being a factor for the court to consider under section 110-5, also demonstrates Mr. Norwood's failure to obey court-ordered conditions. *People v. Hernandez*, 2023 IL App (2d)

230361-U, ¶ 25. Under these circumstances, we find that there were sufficient facts to support the circuit court's conclusion that the State proved by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat that Mr. Norwood posed to the safety of any person or persons or the community.

¶ 27    Mr. Norwood asserts that the trial court solely relied on his criminal history in deciding to detain, which was insufficient, standing alone, to support that determination. The record is clear, however, that the court did not solely rely on his criminal history in making the determination to detain. Mr. Norwood's argument ignores the holistic approach the circuit court is required to take when determining whether to detain or release with conditions. The court is mandated to consider the State's proffered facts, the weight of the evidence, the defendant's criminal background, and whether the defendant was on parole at the time of the offense, among other factors. 725 ILCS 5/110-5(a) (West 2022). Therefore, the court did not base its decision to detain solely on Mr. Norwood's criminal background.

¶ 28    Finally, we find unpersuasive Mr. Norwood's argument that electronic monitoring would mitigate his threat to the community because it is a more invasive form of court-mandated monitoring than parole. Where the court has already found that Mr. Norwood poses a real and present threat to the safety of any person or persons or the community, a finding which Mr. Norwood does not challenge on appeal, "knowing where [Mr. Norwood] is located does little to prevent the type of grave harm that [he] threatened in this case." *People v. Villarreal*, 2023 IL App (2d) 230313-U, ¶ 14. Electronic monitoring would not mitigate the real threats that Mr. Norwood would carry a gun or would fire a gun again. *Id.* Accordingly, because the trial court's factual findings were not against the manifest weight of the evidence, we cannot say that the court abused its discretion in denying Mr. Norwood's pretrial release.

¶ 29                                      III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 31    Affirmed.